**TRINITY UNIVERSAL INSURANCE COMPANY, Appellant,**

v.

**Clyde H. SMITHWICK, Appellee.**

**No. 15199.**

United States Court of Appeals
Eighth Circuit.

May 2, 1955.

Rehearing Denied May 26, 1955.

William Andress, Jr., Dallas, Tex. (Jay W. Dickey, Pine Bluff, Ark., was with him on the brief), for appellant.

R. C. Limerick, Jr., Little Rock, Ark. (W. H. Rector, Little Rock, Ark., was with him on the brief), for appellee.

Before SANBORN, COLLET and VAN OOSTERHOUT, Circuit Judges.

COLLET, Circuit Judge.

Clyde H. Smithwick a sub-contractor of Lancaster and Love, Inc., recovered a judgment for the balance due on his contract with Lancaster and Love against the defendant Trinity Universal Insurance Co., a Texas corporation, which had executed a bond insuring subcontractors the amount due them from Lancaster and Love. Trinity appeals. The assignments of error require a rather detailed statement of the facts.

On April 16, 1951 the City of Pine Bluff, Arkansas and Lancaster and Love executed a general contract by which the latter as the prime contractor agreed for the price of $1,527,071.81 to construct certain sewer improvements in the City of Pine Bluff. The prime contractor had the right under the contract to sublet the work. It did sublet to plaintiff the construction of six pump stations for the aggregate sum of $174,729.00 by six separate subcontracts. The subcontracts provided that the stations should be completed within 180 days from the time work was begun. Work was to begin within 10 days from the date the prime contractor issued a work order to plaintiff. The work order was issued June 1, 1951.

The subcontracts further provided that in the event the work was not completed within 180 days the plaintiff was to pay the prime contractor the sum of $50.00 for each day required in excess of 180, "provided however, (if) materials (were) not available, the liquidated sum enumerated herein shall be waived."

It was further provided that the plaintiff should not be liable for any liquidated damages caused by reason of the delay of the prime contractor.

The defendant executed its bond April 16, 1951 insuring the performance of the general contract by the prime contractor. Defendant's bond inured to the benefit of plaintiff as a subcontractor insuring to plaintiff the payment of all sums due him from Lancaster and Love, the prime contractors.

When Lancaster and Love proffered the completed job to the City a controversy arose between them concerning the work and it was not accepted by the City. Lancaster and Love brought suit in the United States District Court for the Eastern District of Arkansas against the City for the contract price. The City brought Trinity into the case. Both Lancaster and Love and Trinity by their pleadings in that case asserted comple-

tion of the entire contract, including plaintiff's subcontracted portion of the work in accordance with the terms of the general contract. That suit was filed November 7, 1952, and according to the briefs was referred to a special master before whom it is still pending.

Plaintiff filed the present action on August 4, 1953 against Trinity and the City in the Arkansas State Court. The complaint alleged the execution of the general contract between the City and Lancaster and Love, the execution of the bond by Trinity, and the execution and performance of the six subcontracts by plaintiff. It was alleged in paragraph 8 that—

> "8. The work which plaintiff agreed to construct under the terms of said contracts dated April 30, 1951, has been fully completed and has been accepted by the City of Pine Bluff and is now being used by said City of Pine Bluff."

The complaint further alleged that the original contract price had been increased $599.51 to a total of $175,328.51, that $154,427.33 had been paid and certain work of the value of $367.50 omitted, leaving a balance due plaintiff of $20,-533.61 for which it prayed judgment against Trinity and the City. Trinity's "Contractor's Surety Bond" and plaintiff's six subcontracts were attached to the complaint as exhibits and made a part of the complaint. The cause was removed to the United States District Court for the Eastern District of Arkansas. The defendant Trinity answered asserting in general terms that the complaint failed to state "a claim against this defendant upon which relief can be granted," alleged that Lancaster and Love was a necessary and indispensable party, admitted the execution of the general contract, the execution of Trinity's bond, and the execution of plaintiff's six subcontracts. Referring to paragraph 8 of the complaint (quoted above) Trinity's answer stated:

> "This defendant admits the allegations of paragraph 8 of said peti-

tion except the allegation that the work 'has been accepted by the City of Pine Bluff,' and in this (fol. 13) connection says that while it believes as a matter of law that such work has been accepted by the City of Pine Bluff, there is presently pending litigation in cause No. 2481, hereinafter more fully set out, wherein the City of Pine Bluff denies that it has accepted the work of the plaintiff herein."

Paragraph 9 of the Complaint contained the allegations above referred to of the amount of plaintiff's contract price, the payments and credit and the amount due plaintiff. Answering that paragraph Trinity stated that it admitted those allegations except the allegation that "the sum claimed is now due." In that connection Trinity alleged:

> "that under the plaintiff's contracts the balance owing is not due until such time as the entire sewer system of the City of Pine Bluff has been accepted by the owner (the City) and the owner (City) has paid the retained percentages to the prime contractor, Lancaster and Love, Inc., at which time the sum owing by Lancaster & Love, Inc., to plaintiff will become due."

Trinity further admitted that the City had received the benefit of the work performed by plaintiff, admitted that the reasonable value to the City of plaintiff's work was as plaintiff alleged, and admitted a balance owing to plaintiff of $20,533.68. The answer then asserted that the action was prematurely brought in that Lancaster and Love were not obligated to pay plaintiff until it had been paid by the City, that since the City and Lancaster and Love were involved in litigation there was no obligation on the part of Lancaster and Love or Trinity to pay plaintiff until such time as plaintiff's work had been "accepted and paid for by the City."

Trinity then alleged that the City was in the other case claiming liquidated damages from Lancaster and Love under

the general contract—"and in the event they (the City) are successful in that cause, the claim of plaintiff herein will be entitled to be off-set for liquidated damages in an amount then to be determined." The prayer of the answer was that the cause be abated "until all necessary parties are before the court" and until the determination of the litigation between the City and Lancaster and Love, or that this cause be consolidated with the other action.

After Trinity's answer was filed the cause was remanded to the State Court upon the motion of the City. Upon becoming reinvested with jurisdiction of the cause the State Court on motion of the plaintiff, Smithwick, struck from Trinity's answer the allegation that Lancaster and Love was an indispensable and necessary party to the action; the allegation that under plaintiff's subcontracts the balance of $20,533.68 owing to him was not due until such time as the entire sewer system had been accepted by the City and the City had paid Lancaster and Love; and the denial by Trinity of any contractual obligation to plaintiff under Trinity's bond.

The State Court then sustained the City's demurrer to plaintiff's complaint and dismissed the action as to the City. Thereupon on motion of Trinity, the only remaining defendant, the cause was again removed to the United States District Court for the Eastern District of Arkansas. Trinity then sought by amendment of its answer in the United States District Court to restore the portions of its original answer which had been stricken by the State Court. This motion was denied.

When the cause came on for trial before the court, (a jury was waived) and after counsel for both parties had made their opening statements the court held that the only disputed question was whether liquidated damages should be deducted from plaintiff's claim and that the burden was upon Trinity to sustain its claim to such a deduction. The trial then proceeded. All that the record before us shows concerning the opening statements of counsel and the action of the court in this regard is the following:

"Upon opening statements of counsel as to the condition of the pleadings, the court held that the only question left was the question of liquidated damages and that the burden shifts upon the defendant to prove that the plaintiff had defaulted in doing the work, to which defendant excepted."

Trinity treats the action of the trial court reflected in the above quoted paragraph as the entry of a summary judgment in favor of plaintiff and upon that premise argues that a summary judgment could not have been properly entered. But this record does not justify us in accepting the correctness of that premise. The more appropriate interpretation of the record is, as the quoted language indicates, that the court in the light of counsels' analysis of the pleadings, reached and stated the conclusion that the only issue in dispute for the court's determination was the question of liquidated damages and that the burden of proof thereof was on Trinity. Whether Trinity excepted to the conclusion that such was the only issue is by no means clear, since from the quoted language the exception could have applied only to the ruling that the burden was upon Trinity to establish its right to deduct liquidated damages. What representations were made to the court by counsel in their opening statements there is no indication.

We do not imply that counsel have in the preparation of the record misinterpreted or misstated their interpretation of the court's ruling. But we will not assume as a premise that the trial court entered a summary judgment or made a ruling tantamount thereto unless sufficient appears in the record for us to justify that assumption. Furthermore it could not have been a summary judgment under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. Nor was it a judgment under Rule 54(b) of those Rules.

■ The question therefore is whether the conclusion stated and the action taken constituted prejudicial error. The practicalities of the situation are of some importance. The case was being tried by the court without a jury. Counsel made their opening statements for the purpose of outlining their respective positions, the issues involved, and the general nature of the evidence in support of their respective positions. Those statements were for the purpose of enlightening the court, not to conceal latent or hidden issues embraced within a possible but non-apparent interpretation of the pleadings. A reasonable and fair interpretation of the pleadings justified the trial court in reaching the conclusion that there was no real dispute about the plaintiff's right to recover subject to possible deduction of liquidated damages.

■ The burden of proof on the question of whether Trinity was entitled to charge plaintiff with liquidated damages was Trinity's burden. It was not incumbent on plaintiff to prove that which the pleadings had admitted—that the plaintiff's work was completed and that he was entitled to payment. If the amount demanded was to be reduced by the assessment of liquidated damages it would be because Trinity pleaded and established that affirmative set-off or defense.

The claim now made as a defense to plaintiff's right to recover that plaintiff furnished no labor and materials lien waivers, that plaintiff had not obtained the written approval of his work by the prime contractor, and had not furnished a maintenance bond for one year was not asserted by Trinity either in its original answer, in its requested amendment thereto, or in any manner prior to the ruling complained of.

The trial court was justified in assuming, absent some assertion to the contrary, that those matters were not in dispute. And even if it could be said that technically they were facts which plaintiff was required to establish as a prerequisite to his right to recover, they were sufficiently established or excused by the testimony of plaintiff who was called as a witness by Trinity and was the only witness who testified.

■ As to the labor and materials lien waivers it was undisputed that the work was a public improvement for which laborers and material men had no lien. Johnson v. Flynn, 179 Ark. 253, 15 S.W. 2d 327, Holcomb v. American Surety Co., 184 Ark. 449, 42 S.W.2d 765. And plaintiff testified that he furnished a surety bond to secure the payment of claims for labor and materials furnished to him under the subcontracts. As to the necessity for the written approval of Lancaster and Love, the prime contractors, the pleadings and the evidence showed that Lancaster and Love declined to pay plaintiff for the sole reason that the City had not paid it. There was no provision in plaintiff's subcontracts definitely fixing the time for final payment by the prime contractor to subcontractors.

The Supreme Court of Arkansas held in Friedman v. Schleuter, 105 Ark. 580, 151 S.W. 696, that in the absence of any provision in the contract on the point, the time of making payment is presumed to be the completion of the work. The complaint alleged that the work had been fully completed. The answer admitted the allegation. If Lancaster and Love based their refusal to pay plaintiff upon a misconception of the law, believing that acceptance of the work and payment by the City was a prerequisite to plaintiff's right to payment, its failure to give plaintiff a written approval upon those grounds was arbitrary and would not defeat plaintiff's right to recover.

■ The trial court was justified from the pleadings and the evidence in concluding that that was the sole reason for the lack of a written approval from Lancaster and Love. Acceptance and payment by the City was not a valid ground for Lancaster and Love's refusal to pay plaintiff. National Lumber & Creosoting Co. v. Mullins, 187 Ark. 270, 59 S.W.2d 493; Detroit Fidelity Surety Co. v. Yaffe Iron & Metal Co., Inc., 184 Ark. 1095, 44 S.W.2d 1085.

 As to the one year maintenance bond, plaintiff testified that it was his understanding that the bonds included the one year maintenance bond. There was no evidence contradicting or challenging this testimony. Furthermore, plaintiff's suit was filed more than one year after the work was completed, the trial was more than two years thereafter and there was no indication of any claim for maintenance. These defenses were not of substance. Nor were they meritorious.

Trinity contends there was not evidentiary support for the court's findings that its right to liquidated damages had not been established. This contention involves the further contention that many exhibits were erroneously admitted without proper identification, were pure hearsay evidence, and constituted the evidentiary basis for those findings.

 Trinity sought to show by plaintiff that the subcontracts were not completed within the time allowed by the subcontracts. The contracts were in evidence. They provided, as heretofore noted, that if materials were not available or the delay was caused by the prime contractor, plaintiff should not be liable for liquidated damages. A large part of the documentary evidence, the admission of which is now assailed, bore upon the availability of materials. A portion of it related to delay of the prime contractor. We need not pass upon its admissibility for the reason that if there was other competent evidence to sustain the court's findings it will be assumed that the court based its findings on the competent evidence. Builders Steel Co. v. Commissioner, 8 Cir., 179 F.2d 377. There was such other evidence. The plaintiff testified without objection that the materials were not available, the length of time they were not available and the delays caused by the prime contractor. There was adequate evidence to support the findings and none to the contrary.

Trinity contends that plaintiff waived his right under the Arkansas Statute to payment on completion prior to payment to Lancaster and Love by the City. Its argument is that under the Statute plaintiff would not have been entitled to any payments until the work was completed, that since plaintiff by his sub-contracts obtained the benefit of the payments being made periodically as the work progressed on estimates of partial completion he substituted the method and time for payment specified by the sub-contracts for his statutory right and thereby waived the latter. Trinity then asserts that the sub-contracts read with the general contract provide that payment was not due plaintiff until the City accepted the entire job and paid Lancaster and Love.

The Arkansas Statute involved, § 14–604 et seq. Ark.Statutes of 1947, required the giving of Trinity's bond. The bond was held in Detroit Fidelity & Surety Co. v. Yaffe Iron & Metal Co., 184 Ark. 1095, 44 S.W.2d 1085, 1086 to be for the protection of furnishers of labor and materials and should be construed liberally to effectuate that purpose. The Arkansas Supreme Court then went on to say:

"The law requiring the bond to be executed to cover liabilities in accordance with the terms of the statute, the principal and surety, even by express terms of the bond, could not limit or restrict their liability by employing or omitting to include therein the terms of the statute."

Lancaster and Love and Trinity could not therefore by contract limit their liability to plaintiff fixed by the statute. But Trinity asserts something somewhat different, i. e., that plaintiff could, and did, by contract waive his rights under the statute. Generally speaking, as Trinity asserts, a person may by contract waive a right given him by law so long as the waiver does not run counter to public policy or public morals.

 Assuming for present purposes only that such a waiver by plaintiff would not be contrary to the public policy of Arkansas and that plaintiff could by express contract waive his rights under

the Arkansas Statute and agree that his compensation should not be due until the City paid Lancaster and Love, in doing so he would be waiving practically all of the benefit of the statutory bond. National Lumber & Creosoting Co. v. Mullins, 187 Ark. 270, 59 S.W.2d loc. cit. 495. See also Holcomb v. American Surety Co., 184 Ark. 449, 42 S.W.2d 765. Such waivers are not favored by the law and will not be implied or enforced without a showing of a clear intent to relinquish statutory rights. The asserted waiver is based upon the assumption that plaintiff impliedly gave up his right to the protection of the bond for the privilege of being paid periodically on partial completion estimates. But the practice of paying subcontractors in that manner is not an unusual one when the protection of a bond is also present. It would be unreasonable to assume that a waiver was intended for that reason.

A further reason for enforcing the waiver is advanced that plaintiff by agreeing in the sub-contracts that the provisions of the general contract should be binding upon him, thereby agreed that a provision in the general contract that Lancaster and Love should not be entitled to final payment of their retained percentages from the City until final inspection and acceptance by the City, should also apply to the payment of plaintiff's final percentages. A buildup of intention in such a tenuous manner does not meet the requirement that a clear intent for a waiver must be shown.

Trinity assumes that the trial court denied its proffered amendment restoring the defenses stricken by the State Court upon the ground that the action of the State Court was final and had become the law of the case. That the defense of non-maturity of plaintiff's claim and that the action was prematurely brought were properly stricken under the law of Arkansas has been demonstrated. Sufficient ground for refusal to permit the amendment therefore existed.

The defense, or plea in abatement, based upon the premise that Lancaster and Love was a necessary and indispensable party is also untenable. The same question arose in Holcomb v. American Surety Co., 184 Ark. 449, 42 S.W.2d 765, 767. The Supreme Court of Arkansas said:

"The third ground of appellees' demurrer was that there was a non-joinder of necessary parties, in that the contractor was not made a party and section 6919 of the Digest is invoked as authority for the position taken. This section provides that, in all cases where a lien shall be filed under the provisions of the act by any person other than a contractor, it shall be the duty of the contractor to defend the action at his own expense. The act referred to in section 6919 was one enacted for the benefit of laborers or other persons who should do work for private individuals or corporations, giving them a lien upon the building, erection, or improvement, etc. This statute has no application to the instant case, as the construction in question was of a public nature upon which there could be no liens and the rights of the persons performing work or furnishing material must be found in the bond given for their protection. This bond, which is hereafter set out, entitles the beneficiaries—the laborers and materialmen—to an action against the obligors. Oliver Construction Co. v. Williams, 152 Ark. 414, 238 S.W. 615. Clark was a proper, but not a necessary party."

The trial court allowed plaintiff the statutory penalty and an attorney fee under Section 66–514 of the Arkansas Statutes of 1947 which provides for such an allowance against surety companies and others for failure to pay claims within the time specified in the policy or bond *"after demand made therefor."*

Trinity contends there was no demand such as the statute required and for that reason the allowance was improper. There is some variety of opinion on the question of whether the filing

of a suit without prior formal demand will satisfy a statutory requirement for a demand. Trinity cites several cases in which the filing of a suit without prior demand was held to be insufficient. Noteworthy of those is the Texas case of Metropolitan Life Ins. Co. v. Wann, 130 Tex. 400, 109 S.W.2d 470, 115 A.L.R. 1301. In Texas under a somewhat similar statute, that appears to be the rule. See Metropolitan Life Ins. Co. v. Wann, 130 Tex. 400, 109 S.W.2d 470. It appears that the Texas statute requires that the "demand" must be made thirty days before the filing of the suit. V.A.T.S.Insurance Code, art. 3.62. Metropolitan Life Ins. Co. v. Wann, supra, 109 S.W. loc. cit. 472.

The Arkansas Statute provides that:

"This liability attaches when liability is denied by the insurer and suit is filed."

The underlying purpose for requiring a formal demand as a prerequisite to liability for such a penalty is that the insurer have an opportunity to investigate the claim and pay the amount of the demand without incurring the penalty. The thirty day provision in the Texas Statute answers that purpose. It appears that the Arkansas Supreme Court has construed the Arkansas Statute as not requiring a demand other than the filing of a suit and has accomplished the above stated underlying purpose by allowing the insurer to tender into court and confess judgment for the amount sued for and be relieved of the penalty and attorney fees. Broadaway v. Home Ins. Co., 203 Ark. 126, 155 S.W.2d 889; National Fire Ins. Co. v. Kight, 185 Ark. 386, 47 S.W.2d 576. It is true that in those cases there had been a previous demand before suit for a larger amount than claimed in the suit. But that does not alter the principle upon which the cases were determined. The original demands were not the same as those contained in the suit. Hence the institution of the suit contained the first demand for the amount then claimed under the Arkansas decisions.

A new and lesser demand may be made by amendment after the suit is filed in which event if the insurer offers to pay the reduced amount, or asks for time in which to pay, there can be no recovery of the penalty. Life & Casualty Co. v. Sanders, 173 Ark. 362, 292 S.W. 657. But when the insurer elects "to go on and contest the claim on other grounds," and there is a recovery for the amount sued for it becomes liable under the Arkansas Statute for the penalty and attorney fee. Queen of Arkansas Ins. Co. v. Milham, 102 Ark. 675, 145 S.W. 540; National Fire Ins. Co. v. Kight, supra. That is the situation in this case.

We are asked to allow additional attorney fees for this appeal. The fee heretofore allowed by the trial court is adequate. That request is denied.

No reversible error being shown, the judgment is affirmed.